UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| **Jerome Mason,**<br>Petitioner<br>-vs-<br>**Dora B. Schriro, et al.,**<br>Respondents | CV-08-1970-PHX-PGR (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Winslow, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 27, 2008 (#1).  On December 22, 2008, Respondents filed their Response (#7).   Petitioner filed a Traverse on January 9, 2009 (#8), and a Supplement on January 16, 2009 (#11).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.


## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

On February 27, 1998, Petitioner engaged in a verbal argument with the victim at a motel in Phoenix, Arizona.  The victim retired to his motel room with a woman.  Petitioner followed the victim,  kicked down the door to the motel room and fired a number of shots at the victim, killing him.  Petitioner was ultimately arrested in 2001 in Milford, Connecticut. (Exhibit R, Mem. Dec. at 1-7.) (Exhibits to the Answer (#7) are referenced herein as "Exhibit

- 1 -

1  ___.")

2

3  **B. PROCEEDINGS AT TRIAL**

4  Petitioner proceeded to a jury trial in April, 2002, and was convicted of first degree

5  murder, burglary in the first degree and endangerment. (*Id.* at 1.) Petitioner was sentenced

6  to concurrent sentences of: (a) life without possibility of parole for 25 years, (b) 10.5 years,

7  and (c) 2.25 years. (*Id.* at 8.)

8  Petitioner filed a Motion to Vacate Judgment (Exhibit L) arguing that, after the jury

9  verdict, he had met in the jail the man who was Petitioner's passenger the night of the murder

10  (referred to at trial as "Diz", and eventually identified by Petitioner as "Dale Chambers"),

11  and asserting that this man would testify that Petitioner had not had a weapon, had not shot

12  the victim, and the prosecution's star witness had lied about being outside the motel room.

13  No affidavit of the witness was presented, but trial counsel related that he had interviewed

14  the witness. (Exhibit L at 3-4.) The trial court rejected the motion, finding the testimony

15  was cumulative and would not have change the result at trial, and Petitioner had failed to

16  show diligence in seeking the evidence. The court also noted that Petitioner filed to identify

17  the witness by anything more than his nickname. (Exhibit N, M.E. 7/24/02.) Petitioner filed

18  a Motion for Reconsideration identifying his as Dale Chambers, and objecting to the trial

19  court's ruling on the motion to vacate before a reply could be filed. (Exhibit O.) That

20  motion was summarily denied. (Exhibit P, M.E. 8/21/02.)

21

22  **C. PROCEEDINGS ON DIRECT APPEAL**

23  Petitioner filed a direct appeal, arguing: (1) the trial court improperly sanitized an eye-

24  witness' prior felony conviction; and (2) the trial court improperly denied a motion asserting

25  newly discovered evidence in the form of testimony of Petitioner's companion on the night

26  of the murder. (*Id.* at 9, 12.) The Arizona Court of Appeals denied the appeal, and affirmed

27  Petitioner's convictions and sentences. (*Id.* at 16.)

28  Petitioner filed a Petition for Review (Exhibit S), which was denied (Exhibit T) on

April 20, 2004.

**D.  PROCEEDINGS ON FIRST PETITION FOR POST-CONVICTION RELIEF**

On January 12, 2004, during the pendency of his direct appeal, Petitioner filed a Notice of Post-Conviction Relief (Exhibit U).  He eventually filed a Petition for Post-Conviction Relief (Exhibit V) asserting ineffective assistance of counsel, unconstitutional use of perjured testimony, newly discovered evidence, and denial of opportunity to confront witnesses.  The petition was summarily dismissed by the trial court.  (Exhibit X, M.E. 2/16/05.)

Petitioner filed a Petition for Review (Exhibit Y) by the Arizona Court of Appeals, asserting ineffective assistance of counsel, and denial of his right to confront and cross examine witnesses.  The petition for review was summarily denied (Exhibit Z).

Petitioner then sought review by the Arizona Supreme Court, which was summarily denied on October 26, 2007 (Exhibit AA).

**E.  PROCEEDINGS ON SECOND PETITION FOR POST-CONVICTION RELIEF**

On February 26, 2007, during the pendency of his first PCR petition, Petitioner instituted his second PCR proceeding by filing a Notice of Post-Conviction Relief (Exhibit BB).  The Notice asserted the use of perjured testimony.  On March 15, 2007, the trial court summarily dismissed the Notice, noting it was untimely but asserted newly discovered evidence, and finding that it was precluded under Rule 32.2(a), Arizona Rules of Criminal Procedure.  (Exhibit CC, M.E. 3/15/07.)  Petitioner filed a Petition for Review, which was summarily denied on March 14, 2008.  (Exhibit DD, Order 3/14/08.)

**F.  PRESENT FEDERAL HABEAS PROCEEDINGS**

Petitioner commenced the instant federal habeas proceeding by filing his Petition for Writ of Habeas Corpus (#1) on October 27, 2008.  The Petition asserts ten grounds for relief: (1) ineffective assistance of counsel; (2) selective prosecution; (3) actual innocence; (4)

prosecutorial misconduct; (5) suggestive identification; (6) false evidence; (7) violation of *Miranda*; (8) improper vouching by the prosecution; (9) "*Chapman*" (*i.e* not harmless) error; and (10) failure to exclude witnesses from the court room.

On December 22, 2008, Respondents filed their Answer (#7), arguing that Grounds 2 through 10, and portions of Ground 1 are procedurally defaulted. (#7 at 20-21.) Respondents argue that Petitioner at least arguably exhausted his claim that trial counsel was ineffective for failing to support the motion to vacate judgment by presenting an affidavit with the testimony of Petitioner's companion on the night of the murder. However, Respondents argue the claim is without merit because the delay in locating the witness, not the failure to present an affidavit, was the basis for denial of the motion, and because the court properly found a lack of prejudice. (*Id.* at 21-22, 29-30.)

On January 9, 2009, Petitioner filed his Traverse (#8). In response to the procedural default issue, Petitioner argues that he presented his actual innocence claim in his first PCR petition (*id*. at 4), lacked counsel in his PCR proceedings (*id*. at 5), raised his claims in a state habeas petition (*id*. at 6), the Arizona Supreme Court's ruling on August 20, 2008 on his state habeas petition recognized that his claims were previously raised (*id.*), and the Response (#7) was not timely filed (*id.* at 7).

On January 16, 2009, Petitioner filed a supplemental Points and Authorities (#11) in support of his Traverse. Petitioner again argues his state habeas petition exhausted his claims (#11 at 6-10), and that trial counsel was ineffective for failing to properly investigate, determine the name of the newly discovered witness, and to provide it to the trial court (*id.* at 11-14).

## III. APPLICATION OF LAW TO FACTS

### A. EXHAUSTION AND PROCEDURAL DEFAULT

Respondents argue that Petitioner's Grounds 2 through 10, and all but a portion of Ground 1, are unexhausted, now procedurally defaulted, and thus barred from habeas review.

**1. Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

**a. Proper Forum/Proceeding**

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of the Arizona avenues of relief (direct appeal of petition for post-conviction relief) must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

"In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

**b. Fair Presentment**

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented." That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor,* 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d

1143, 1149 (9th Cir. 2007)).

**c. Avenues of Presentment** - Petitioner visited the state appellate courts on four separate occasions: (1) direct appeal; (2) review of first PCR proceeding; (3) review of second PCR proceeding; and (4) state habeas proceeding. For the following reasons, only the first two resulted in any exhaustion.

Effect of Second PCR Proceeding - In his second PCR Notice (Exhibit BB), Petitioner asserted that the prosecution utilized perjured testimony. Respondents have not provided Petitioner's Petition for Review in his second PCR proceeding. Arguably, any of Petitioner's claims could have been presented in that petition for review. However, the Arizona Court of Appeals issued a summary denial of Petitioner's claims. (Exhibit DD.) A summary denial following a reasoned decision is presumed to be based on the same grounds as the reasoned decision, and the habeas court should "look through" the summary denial to the rationale given in the reasoned decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991). The trial court issued a "reasoned decision", summarily dismissing the proceeding on the basis that the claims were precluded by Ariz. R. Crim. P. 32.2(a) for failure to raise them on direct appeal or the prior PCR proceeding. As discussed hereinafter, that decision would be an independent and adequate state bar of any claims presented to the Arizona Court of Appeals, and thus would not constitute fair presentation.

Effect of State Habeas Proceeding - Petitioner argues that various claims were exhausted when he presented them to the Arizona Supreme Court in his state habeas petition. (*See* Traverse, #8, Exhibit A, Order 8/20/8.) Such presentation would not suffice. "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roentgen v. Copeland,* 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Thus, where a claim is cognizable in the Arizona courts on direct appeal or in a Rule 32 post-conviction relief proceeding, presenting it in a state habeas petition is not adequate to exhaust state remedies. *Id.*

Effect of Finding of Prior Presentation in State Habeas Proceeding - Petitioner has

asserted that in denying Petitioner's state habeas petition, the Arizona Supreme Court found that the issues raised therein "were previously presented to *this* Court in prior petitions for review." (Petition, #1, Exhibits, Order 8/20/08 (emphasis added).) Petitioner argues that this acknowledges the exhaustion of his state remedies. The undersigned presumes for purposes of this Report & Recommendation that this Court is bound by such a determination, and thus must find that Petitioner had presented all such claims. Assuming *arguendo* that those claims included some or all of those claims determined herein to not have been fairly presented, no exhaustion would result because presentation to the Arizona Supreme Court is not sufficient for fair presentment, and Petitioner has not shown that his claims were presented to the Arizona Court of Appeals.

"Whether a claim is exhausted through a direct appellate procedure, a post-conviction procedure, or both, the claim should be raised at all appellate stages afforded under state law as of right by that procedure." *Casey v. Moore,* 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure,* § 23.3b (4th ed. 1998)). Thus, "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor'...[r]aising the claim in such a fashion does not, for the relevant purpose, constitute 'fair presentation.'" *Castille v. Peoples,* 489 U.S. 346, 351 (1989). Therefore, where a petitioner "raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them." *Casey,* 386 F.3d at 918.

Summary regard Proceedings -Based upon the foregoing, only those claims presented in Petitioner's direct appeal and his Petition for Review to the Arizona Court of Appeals in his first PCR proceeding can provide a basis for finding exhaustion of his state remedies.

**d.  Application to Petitioner's Claims**

**Ground One - Ineffective Assistance** - In his Ground One, Petitioner argues that trial counsel was ineffective for: (a)   failing to interview witnesses; (b) failure to file for voluntariness hearing; (c) failing to challenge the arrest warrant; (d) failing to submit the

affidavit of Petitioner's passenger; (e) failing to investigate and photograph the scene. (Petition, #1, Attach. at 1.)

Petitioner did not assert any claims of ineffective assistance on direct appeal. (*See* Exhibit Q, Opening Brief.)

Petitioner did mark his form PCR petition in his first PCR proceeding as asserting "[t]he denial of the constitutional right to representation by a competent lawyer at every critical stage of the proceeding." (Exhibit V, PCR Pet. at 2.) In his attachment, Petitioner argued only that counsel "was ineffective for not submitting the newly discovered testimony of Mr. Chambers in affidavit form and not presenting the potential testimony of Mr. Chambers fully." (*Id.* at Exh. A at 2, ¶ 3.) Petitioner did not reference any federal law in his Petition or Exhibit in support of his claim of ineffective assistance.[1] In his Petition for Review (Exhibit Y), Petitioner repeated his claim, this time specifically referencing the "U.S. Const., 6th & 14th Amendments . . . *Strickland v. Washington*, 466 U.S. 668 (1984)." (Exhibit Y at 5.) Again, however, his arguments were limited to counsel's failure with respect to the newly discovered testimony from Petitioner's passenger.

Thus, Petitioner's Ground One is unexhausted, with the exception of his claim that trial counsel was ineffective with regard to the presentation of testimony of Petitioner's passenger.

**Ground Two - Selective Prosecution** - Petitioner argues in his Ground Two that he was the victim of "selective prosecution" because witnesses had identified the suspect as

---

[1] Petitioner's failure to assert a federal basis for his claim to the trial court is not controlling. Failure to present to the trial court does not prevent exhaustion; all that is required is presentation "at all *appellate* stages." *Casey*, 386 F.3d at 916 (emphasis added). "If the petitioner fails to raise a federal claim at trial (or if the claim was not cognizable at all or did not arise until after trial), the petitioner satisfies the exhaustion requirement by raising the claim on appeal, on a motion for rehearing of the appeal, or even in a delayed appeal." Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure,* § 23.3b (5th ed. 2001). The failure to present to the trial court might prevent habeas review if it results in the appellate court applying a procedural bar which qualifies as an "independent and adequate state ground." But Respondents fail to meet their burden of pleading such a ground, and none appears from the summary denial of Petitioner's claims. (*See* Exhibitz Z (Order 7/12/09) and AA (Order 10/26/7).

- 8 -

having light colored eyes and driving a white Oldsmobile (apparently in contrast to Petitioner's eye color and vehicle), and yet the state proceeded to prosecute Petitioner. Petitioner did not assert this claim in his direct appeal (Exhibit Q, Opening Brief), his first PCR Petition (Exhibit V), or his Petition for Review on his first PCR Petition (Exhibit Y). Accordingly, this claim was not properly exhausted.

**Ground Three - Actual Innocence** - In his Ground Three, Petitioner argues that he is actually innocent of the charges. (Petition, Attachment at 2-3.) He made no such claim on direct appeal. (*See* Exhibit Q, Opening Brief.) Petitioner asserts he raised the claim in his first PCR petition. (Traverse, #8 at 4-5.) He argued in his first PCR petition that he was "innocent of the charges in this case," but offered no federal basis for such claim. (Exhibit V, PCR Pet. at 2, ¶ 5.) More importantly, he made no claim of actual innocence in his Petition for Review, but simply argued that there was a basis for a reasonable doubt. (Exhibit Y at 4.) Accordingly, this claim was not properly exhausted.

**Grounds Four, Six, Eight and Nine  - Prosecutorial Misconduct** - In his Ground Four, Petitioner argues that the prosecutor engaged in misconduct in using false testimony, attempted to improperly influence the jury, and fraternizing with and interviewing a prosecution witness. (Petition, #1, Attachment at 3-4.)

In his Grounds Six and Nine, Petitioner repeats the specific argument that the witnesses' testimony was false. (*Id.* at 5, 7-8.)[2]  In Ground Nine he also asserts the error was not harmless, apparently referencing *Chapman v. California,* 386 U.S. 18 (1967) (adopting "harmless-constitutional-error rule"). (*Id.* at 7.) The presence of "false evidence" is not a basis for constitutional relief. *See e.g. Herrera v. Collins,* 506 U.S. 390, 400 (1993) ("federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact"). Such evidence is relevant to claims of

---

[2] Respondents argue Ground Six is not procedurally defaulted, but was procedurally barred by presentation in his second PCR proceeding. However, the absence of Petitioner's petition for review in that proceeding precludes a finding that it was raised to the Arizona Court of Appeals, and thus a conclusion that it was determined by that Court to have been precluded. Whether procedurally defaulted or procedurally barred, the result is the same.

prosecutorial misconduct or actual innocence. Petitioner's Grounds Six and Nine do not assert his actual innocence. Accordingly, these grounds are liberally construed to assert claims of prosecutorial misconduct.

In his Ground Eight, Petitioner argues that the prosecutor engaged in misconduct by improperly vouching for un-credible witnesses by presenting their testimony. (*Id.* at 6-7.)

Petitioner made no claims of prosecutorial misconduct on direct appeal. (*See* Exhibit Q, Opening Brief.) He argued in his first PCR petition that the witnesses made "several inconsistent statements," but did not assert prosecutorial misconduct of any kind. (Exhibit V, Exhibit A at 2, ¶ 8.) Nor did he assert such a claim in his Petition for Review (Exhibit Y). Accordingly, the claims in Grounds 4, 6, 8 and 9 were not properly exhausted.

**Ground Five - Suggestive Identification** - In his Ground Five, Petitioner argues that the courtroom identification of him was unduly suggestive because Petitioner was the only defendant at the defense table. (Petition #1, Attachment at 4-5.) Petitioner did not address the identification in his direct appeal (Exhibit Q), his first PCR Petition (Exhibit V), or his Petition for Review (Exhibit Y). Accordingly, this claim was not properly exhausted.

**Ground Seven - *Miranda* Violation** - In his Ground Seven, Petitioner argues that when he was questioned by officers in Milford, Connecticut and Atlantic City, New Jersey, he was not advised of his *Miranda* rights. He made no such claim on direct appeal (*see* Exhibit Q, Opening Brief), his first PCR petition (Exhibit V), or his Petition for Review (Exhibit Y). Accordingly, this claim was not properly exhausted.

**Ground Ten - Exclusion of Witnesses** - In Ground Ten, Petitioner complains that the trial court improperly failed to exclude all but one of the state's investigators from the courtroom during trial testimony. . He made no such claim on direct appeal (*see* Exhibit Q, Opening Brief), his first PCR petition (Exhibit V), or his Petition for Review (Exhibit Y). Accordingly, this claim was not properly exhausted.

**Summary re Exhaustion** - Base on the foregoing, the undersigned concludes that Petitioner has failed to exhaust his state remedies on all of his claims, except that portion of Ground One that asserts trial counsel was ineffective with regard to the presentation of

testimony of Petitioner's passenger.

### 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a), and its timeliness bar in Ariz. R. Crim. P. 32.4.  (Answer, #18 at 13-14.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.  *See generally* Ariz.R.Crim.P. 31.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post conviction relief that  "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).  Under this rule,  some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*,  202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).  For others of "sufficient constitutional magnitude," the State "must show

that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id.* That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071.[3]

Here, Petitioner's unexhausted claims do not fit within the list of claims identified as requiring a personal waiver. Nor are they of the same character. Therefore, it appears that Petitioner's claims would be precluded by his failure to raise them in an earlier proceeding.

<u>Timeliness Bar</u> - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

<u>Exceptions</u> - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). *See* Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness

---

[3] Some types of claims addressed by the Arizona Courts in resolving the tyep of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz. at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission), *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*, 2008 WL 2651659 (App. 2008);

bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor, with one exception, does it appears that such exceptions would apply. The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Paragraph (f) has no application where the petitioner filed a timely notice of appeal. Paragraph (g) has no application because Petitioner has not asserted a change in the law. Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims. *See State v. Swoopes*, 216 Ariz. 390, 404, 166 P.3d 945, 959 (App. 2007) (32.1(h) did not apply where petitioner had " not established that trial error ...amounts to a claim of actual innocence").

Actual Innocence Claim - However, Petitioner's Ground Three argues that he is

actually innocent of the charges. (Petition, Attachment at 2-3.) It is true that Petitioner

argued in his first PCR petition that he was "innocent of the charges in this case." (Exhibit

Y at 4.) However, Rule 32.1(h) would except that claim not only from the timeliness bar,

but also from the preclusion bar. Accordingly, the undersigned finds that Petitioner's claim

of actual innocence is not procedurally defaulted.

Summary - Accordingly, with the exception of his actual innocence claim in Ground

Three, the undersigned must conclude that review through Arizona's direct appeal and post-

conviction relief process is no longer possible for Petitioner's unexhausted claims.

**Summary re Procedural Default** - Except for the portion of Ground One asserting

ineffective assistance with regard to the newly discovered evidence, Petitioner has failed to

exhaust his state remedies on the claims in the Petition, and (with the exception of Ground

Three) is now procedurally barred from doing so. Accordingly, these unexhausted claims

are procedurally defaulted, and absent a showing of cause and prejudice or actual innocence,

must be dismissed with prejudice.

## B. INDEPENDENT AND ADEQUATE STATE GROUNDS

Petitioner arguably raised the claims in his Ground Six in his second PCR Notice

(Exhibit CC).[4] The trial court summarily dismissed that proceeding on the basis that the

claims were precluded by Ariz. R. Crim. P. 32.2(a) for failure to raise them on direct appeal

or the prior PCR proceeding. (Exhibit CC, M.E. 3/15/07.) The Arizona Court of Appeals

summarily dismissed Petitioner's petition for review from that decision. (Exhibit DD, Order

3/14/08.) As discussed above, a summary denial following a reasoned decision is presumed

to be based on the same grounds as the reasoned decision, and the habeas court should "look

through" the summary denial to the rationale given in the reasoned decision. *Ylst v.

Nunnemaker,* 501 U.S. 797, 804 (1991). Thus, any claims presented in Petitioner's petition

---

[4] Respondents only explicitly rely on procedural bar as to Ground Six, which was
asserted in the second PCR notice. (*See* Answer, #7 at 20.) However, as discussed herein,
the procedural bar must be deemed to equally apply to whatever claims were asserted in the
ensuing petition for review.

for review in his second PCR proceeding must be deemed to have been rejected on the basis of that preclusion rule.[5]

Federal habeas review of a defaulted federal claim is precluded when the state court has disposed of the claim on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

In *Stewart v. Smith*, 536 U.S. 856 (2002), the Supreme Court determined that Arizona's rule of preclusion (Ariz. R. Crim. P. 32.2) is "independent" of federal law. The Court did not decide, however, whether the rule is "adequate."

In *Woods v. Hall*, the Ninth Circuit noted that cases addressing the "adequacy" of a state procedural bar "generally fall into two categories: (1) rules that have been selectively applied to bar the claims of certain litigants,  and (2) rules that are so unsettled due to ambiguous or changing state authority that applying them to bar a litigant's claims is unfair." 130 F.3d 373, 377 (9th Cir. 1997). There has been no assertion, nor is the undersigned aware of any basis for one, that Arizona's preclusion bar is applied selectively. Further, the text of Arizona's preclusion bar as embodied in Rule 32.2 has been "firmly established."

It is true that the interpretation of Rule 32.2 had been in significant turmoil and dispute in recent years concerning its application to specific claims. *See e.g. Stewart v. Smith*, 202 Ariz. 446, 450, 46 P.3d 1067, 1071 (2002) (disapproving of court of appeals' decisions making determination of "sufficient constitutional magnitude" depend on consideration of merits). Thus, if there was some dispute within the Arizona Courts as to whether Petitioner's claims asserted in his second PCR were "of sufficient constitutional magnitude", then

_____

[5] Petitioner argues his unexhausted claims were asserted in his state habeas petition. In disposing of those claims, the Arizona Supreme Court noted that those issues were previously presented. (Traverse, #8 at Exhibits, Order 8/20/08.) The Court did not, however, explicitly rely upon any preclusion bar or other procedural bar to dispose of the claim. Respondents do not assert any procedural bar from this proceeding. Accordingly, the undersigned presumes that order does not establish a procedural bar.

- 15 -

perhaps this Court would be required to find that as to those claims the rule was not "firmly established." and thus did not bar habeas review.

Here, however, Petitioner makes no assertion that any claim would be of "sufficient constitutional magnitude" so as to qualify for such an exception, nor does he assert any dispute about such an issue. *See Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003) (discussing burden of proof on independence and adequacy),

Accordingly, the undersigned finds Rule 32.2(a) to be an independent and adequate state ground sufficient to bar whatever grounds were asserted in Petitioner's petition for review in his second PCR proceeding.

However, Respondents have failed to provide a copy of Petitioner's Petition for Review in this proceeding. Accordingly, the undersigned cannot determine what claims were asserted, and are thereby procedurally barred. Nonetheless, as discussed above, the undersigned finds all unexhausted claims to be procedurally defaulted, excepting only Ground Three's claim of actual innocence. Therefore, with that exception, the inability to identify the claims precluded has no affect to the outcome in this proceeding.

With regard to Petitioner's actual innocence claim, it would have been subject to the exception in Rule 32.1(h), discussed above, avoiding any preclusion bar. Thus, the undersigned must presume it was not presented his the second PCR proceeding.

Therefore, consideration of any procedural bar in Petitioner's second PCR proceeding would not alter the outcome in this proceeding. Therefore, the undersigned presumes, for purposes of this Report & Recommendation, that none of Petitioner's claims asserted herein were subject to the procedural bar applied in Petitioner's second PCR proceeding.

## C. MISCARRIAGE OF JUSTICE

## 1. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse

- 16 -

the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984). Although both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).

"Cause" is the legitimate excuse for the default. *Thomas*, 945 F.2d at 1123. "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues in his Traverse that: (1) he was denied counsel in his first PCR petition; and (2) he should have been afforded a hearing on his PCR petitions. (Traverse, #8 at 5.) The undersigned construes these allegations as an assertion of cause to excuse his procedural defaults.

**Lack of Counsel** - The lack of effective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998). However, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation. *Id.* Accordingly, where no constitutional right to an attorney exists, ineffective assistance will not amount to cause excusing the state procedural default. *Id.* If there is no federal constitutional right to counsel, a petitioner "cannot establish cause because of the state trial court's failure to appoint him counsel, even if such failure was erroneous as a matter of state law." *Smith v. State of Idaho,* 392 F.3d 350, 357 (9th Cir. 2004). In *Patrick Poland v. Stewart,* 169 F. 3d 573 (9th Cir. 1999), the Ninth Circuit held that "[b]ecause there is no right

to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings." *Id.* at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).   Therefore, because Petitioner had no federal constitutional right to counsel in his PCR proceeding, he cannot rely upon such absence as cause to excuse his procedural default.

Moreover, a claim of ineffective assistance of counsel showing "cause" is itself subject to the exhaustion requirements. *Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Edwards v. Carpenter,* 529 U.S. 446 (2000).  Accordingly, "[t]o the extent that petitioner is alleging ineffective assistance of appellate counsel as cause for the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court." *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).   Here, Petitioner has not exhausted any state remedies on a claim asserting a lack of constitutionally required counsel in his PCR proceedings.

**Lack of Evidentiary Hearing** - Petitioner fails to show how the lack of an evidentiary hearing in the state courts precluded him from asserting his federal claims in the first instance.  Any evidentiary hearing granted would, presumably, have been limited to the claims asserted in the Petition, and thus would not have resulted in presentation of Petitioner's unexhausted federal claims.

**Summary** - Petitioner has failed to show "cause" to excuse his failure to properly exhaust his state remedies, and thus is not entitled to be relieved from his procedural defaults under the "cause and prejudice" standard.

## 2. Actual Innocence

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis

added). However, it is not sufficient that the petitioner point to some legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623(1998) ("'actual innocence' means factual innocence , not mere legal insufficiency"). Rather, a petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

> [T]he prisoner must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."

*Id.*, 477 U.S., at 455, n. 17, quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970).

Here, Petitioner argues that he is actually innocent.   The actual innocence gateway "requires 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial'."   *House v. Bell,* 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324).   Here, the only proof of such innocence proffered is Petitioner's passenger's testimony that established an alibi for Petitioner and contradicted the testimony of trial witnesses who asserted Petitioner/s guilt. (Exhibit V, PCR Pet., Exh. A., Attach., Affid. Chambers.)

Having reviewed the trial transcript, the undersigned finds the following the most relevant evidence[6]:

**<u>Eyewitness</u>** - The woman, Tamara Wallace, who had one arm amputated, testified that on the night of the murder she was sitting in Petitioner's car, a green Mercury Mountaineer,

---

[6]  For example, much trial testimony was devoted to the gun of Greg Clay, the boyfriend of eyewitness Wallace, and fellow resident of the motel.  This was part of a defense strategy to suggest that Clay was the perpetrator. That testimony is not deemed significant, inasmuch as testimony showed the gun was recovered from Clay's effects after his death, and was determined by ballistic examination to not match the shells recovered from the scene. (Exhibit F, R.T. 4/24/02, Testimony of Randy Leister at 82.)   Evidence of such low credibility and relevance is not summarized herein.

and observed Petitioner engage in an argument with the victim. (Exhibit C, R.T. 4/18/02 at 88.) She exited the vehicle and went to the victim's motel room. (*Id.* at 91.) The victim returned to the room, and was locking the door when Petitioner kicked down the door and shot the victim. (*Id.* at 94-96.) She heard the victim say, when the door was kicked in, "Jerry, no, why are you doing this?" (*Id.* at 98.) The credibility of Ms. Wallace was impeached on a number of grounds, including her statements that the perpetrator had light eyes and drove a white Oldsmobile, her violation of her probation by drinking, her prior felony convictions, and various contradictions in her statements to the police. (*Id.* at 134 *et seq.;* Exhibit D, R.T. 4/22/02.)

**Interviewing Officer** - Officer McFadden of the Atlantic City, New Jersey, Police Department, testified that upon questioning Petitioner admitted owning a green Mercury Mountaineer, to being at the motel and arguing with the two men, one named "McDub", and then leaving the motel, and then returning and kicking down the door to the motel room to fight with the one of the men. (Exhibit E, R.T. 4/23/02 at 14-16.)

**Victim's Nephew** - Robert Haley, the victim's nephew, testified that "McDub" was a close friend of the victim, that on the night of the murder he saw Petitioner in a green Mercury Mountaineer at the motel, that McDub and Petitioner got in an argument and a fight, that the victim broke up the fight, and then returned to his motel room with a one armed white woman. (Exhibit E. R.T. 4/23/02 at 46.) Haley was impeached on the basis of his prior felony conviction. (*Id.* at 52.)

**Investigating Officer** - Detective Ragsdale of the Phoenix Police Department testified that Tamara Wallace identified Petitioner from a photographic lineup as the murderer. (Exhibit E. R.T. 4/23/02 at 113-114.)

**Apartment Dweller** - Raphael Gonzales-Lopez testified that on the night of the murder, a green Explorer- like vehicle pulled into the parking space of the apartment where he was staying, and the two occupants took off running, leaving the vehicle there. (Exhibit E, R.T. 4/23/02 at 160-167.)

**Motel Resident** - Craig Blomquist testified that he was living at the motel on the night

of the murder and heard an argument and saw a scuffle in the parking lot around a small "Blazer-type" vehicle, that the vehicle left and then returned, arguments with the driver again occurred, the vehicle left and returned again, and the driver then kicked the motel room door down and fired shots. (Exhibit F, R.T. 4/24/02 at 91-100.) Blomquist was impeached on the basis *inter alia* that he had originally identified the vehicle as maroon, and as being occupied by up to four people. (*Id.* at 100-154.)

**Landlord** - Ernesto Navarette testified that he was the landlord where Mr. Gonzales-Lopez was staying on the night of the murder and the next morning saw the green SUV in his parking lot with four flat tires, and that he called the police. (Exhibit G, R.T. 4/25/02 at 47-56.)

**Man Fighting With Petitioner** - Robert Williams testified that he was nicknamed "McDub", identified Petitioner as "Jerry", who he had known for a year before the murder. He testified that Petitioner had been driving a green SUV, and on the night of the murder he and Petitioner had a disagreement and scuffle at the motel, that the victim and others broke up. After the scuffle, he went to the room with the victim and a one-armed woman, spoke with Petitioner at the room, Petitioner left the motel, and then Williams left the motel. (Exhibit G, R.T. 4/25/02 at 92-111.) Williams was impeached on the basis *inter alia* of his four felony convictions, drug and alcohol use on the day of the murder, and prior inconsistent statements to investigators. (*Id.* at 111-136.)

**Petitioner** - Petitioner testified that he knew "McDub" and the victim, but denied ever meeting Tamara Wallace. He admitted that twice on the evening of the murder being involved in a dispute at the motel with McDub over a McDub's girlfriend. He admitted that the second incident involved a physical altercation, and that the victim was present. He admitted that he later went to the room where the murder occurred to continue the fight, but McDub declined. He then got in his green 1998 Mercury Mountaineer and left, dropping his passenger "Diz" off at a Circle K. He testified that he had a flat tire before getting on the 202 freeway, and pulled into the parking lot of an apartment complex. He left the car there, got a ride, left the keys with his daughter, and went to Las Vegas with a friend on a preplanned

trip. He then went to New York and New Jersey, and did not return to Phoenix until his arrest. He denied having a gun at the time of the murder and denied shooting the victim. (Exhibit H, R.T. 4/29/02 at 6-30.) He was impeached on the year of the vehicle, his prior inconsistent statements to the officers in New Jersey, that the airbags in his car were already deployed when he was at the motel, his claim that he was not drinking. He denied knowing the true name of "Diz" and asserted hearing that "Diz" was deceased. He claimed that he did not run from his car after leaving it at the apartment complex, and denied having anyone with him. (*Id.* at 30-65.)

**New Evidence from Passenger** - As noted above, Petitioner's only new evidence is from his passenger, Dale Chambers. Chambers asserts in his Affidavit that he and Petitioner were present at the motel, that he knew the woman (Tamara Wallace) who was with the victim and that she had been smoking crack cocaine on that occasion, that Petitioner got into a fight with someone other than the victim and thus Chambers and Petitioner left the motel, and that the victim was alive when they left. He asserts that Petitioner dropped him off away from the motel, and drove away from the motel, entering the 202 freeway, without turning around back towards the motel. He asserts that he had never known Petitioner to possess a gun, and asserts that the victim's relatives and other witnesses offered him money and drugs to implicate Petitioner. (Exhibit V, PCR Pet., Exh. A., Attach., Affid. Chambers.)

**Effect of New Evidence** - This testimony would not have made it " more likely than not that no reasonable juror would have convicted" Petitioner. *Schlup*, 513 U.S. at 327. In most respects, it actually bolsters the other testimony at trial: e.g. the presence at the motel of Chambers, Petitioner and Tamara Wallace; the fight between Petitioner and "McDub"; and Wallace's presence in the room with the victim. In one significant respect, it directly contradicts Petitioner's own testimony. Chambers claims Petitioner entered the freeway after leaving the scene, thus implying he could not have again returned to the motel. However Petitioner denied entering the freeway, and admits leaving his car at an apartment complex in the neighborhood. Thus, even the limited implication (from Chambers' statements) that Petitioner had left the area for good would have been dissipated by Petitioner's own

statements and the evidence about the resting location of the vehicle.

Further, Chambers' testimony would be subject to impeachment as a self-serving attempt to avoid any potential criminal liability as an accomplice, and because it was first recorded in 2004, some six years after the events. *See Taylor v. Illinois,* 484 U.S. 400, 414 (1988) ("It is equally reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed.")

**Other Evidence** - Moreover, this Court must consider all the evidence in making its actual innocence determination, and "is not bound by the rules of admissibility." *Schlup*, 513 U.S. at 327.    In responding to Petitioner's Motion to Vacate, the prosecution proffered evidence of a recorded statement by Williams ("McDub") that Petitioner's passenger "Diz" had told him that "Jerry put him out of the car prior to the shooting.  Jerry told this subject he had to go back and 'handle his business.' " (Exhibit M, Resp. Mot. Vacate at 5.)

**Conclusion** - Considering all the evidence, a reasonable juror could just as likely have rejected Chambers' protestations of Petitioner's innocence of the shooting, just as the jury rejected Petitioner's own protestations, and relied instead upon the eyewitness testimony of Tamara Williams that Petitioner was the shooter, and the testimony of Craig Blomquist that the driver of the dark blazer-type vehicle who had been involved in the arguments in the parking lot was the shooter.

Based upon the foregoing, the undersigned concludes that Petitioner has failed to provide new reliable evidence to show his actual innocence sufficiently to pass the *Schlup* gateway.


**3.  Summary re Procedural Default**

Petitioner has procedurally defaulted on his claims in all grounds except portions of Ground One (ineffective assistance) and Ground Three (actual innocence).  Petitioner has failed to establish cause and prejudice or actual innocence to excuse his procedural default. Accordingly, these procedurally defaulted grounds must be dismissed with prejudice.

**D. BYPASS OF NON-EXHAUSTION; MERITS OF GROUND THREE**

The undersigned has concluded that Petitioner's Ground Three (actual innocence) is unexhausted but not procedurally defaulted. Ordinarily, therefore, this ground should be dismissed without prejudice.

However, 28 U.S.C. § 2254(b)(2) provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Accordingly, the court is free to side step the exhaustion issue when it is more efficient or easier to dispose of a claim on its merits. *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). However, that only applies in limited circumstances where the petitioner has no hope of prevailing on the merits of his claim. "[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court rejected a habeas claim based solely upon an assertion of actual innocence. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400.

In *Herrera,* the Court was willing to "assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." 506 U.S. at 417. Indeed, *Herrera* was itself a death sentence case. Nonetheless, the Court concluded that the conflicting affidavits, submitted long after trial, were insufficient to meet the "extraordinarily high" standard required for making the showing necessary for such a presumed claim. *Id.*

Here, Petitioner's case did not involve the death penalty. Nor was Petitioner without a "state avenue . . . to process such a claim." *Id.* Indeed, *Herrera* was satisfied with the availability of an executive clemency proceeding. Here, as discussed above, Petitioner has

had available to him a state petition for post-conviction relief founded upon his claim of actual innocence.

It is true that rather than merely requiring a likelihood of a different result (as required in a *Schlup* analysis), Arizona requires "clear and convincing evidence" that "no reasonable fact-finder would have found defendant guilty." Ariz. R. Crim. P. 32.1(h). However, nothing in *Herrera* suggests that the standard for state relief would have to match the *Schlup* standard, even in a capital case.

Accordingly, on this basis alone, Petitioner's ground three is without merit.

Moreover, as discussed above, Petitioner has failed to show his actual innocence under the standard applicable to the *Schlup* gateway. Presumably the standard for a free-standing (e.g. not part of a procedural default analysis) claim of actual innocence would be as high, if not higher than the *Schlup* gateway analysis. The only standard contemplated in *Herrera* was one that was "extraordinarily high." The Ninth Circuit has found "that the required showing would have to be at least as high as [requiring that the petitioner] . . . go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart,* 132 F.3d 463, 476 (9th Cir. 1997). With the limited effect of Chambers' evidence (that he didn't see Petitioner kill the victim, that they left with Petitioner while the victim was alive, and then Petitioner left Chambers), Petitioner has failed to proffer anything to affirmatively prove his innocence. Petitioner "has presented no evidence, for example, demonstrating he was elsewhere at the time of the murder, nor is there any new and reliable physical evidence, such as DNA, that would preclude any possibility of [Petitioner's] guilt. *Id.* at 477.

Thus, Petitioner's actual innocence claim not only fails to state a cognizable basis for federal habeas relief, but Petitioner fails to proffer sufficient proof to support his claim.

Accordingly, it is "perfectly clear that the applicant does not raise even a colorable federal claim" in his Ground Three. " *Cassett*, 406 F.3d at 624. Therefore, notwithstanding its unexhausted state, this claim should be denied on its merits.

## E.  INEFFECTIVE ASSISTANCE OF COUNSEL: MERITS OF GROUND ONE

In his Ground One, Petitioner argues, *inter alia*, that trial counsel was ineffective for failing to submit Chambers' affidavit in support of Petitioner's motion to vacate. Respondents counter that the absence of an affidavit was not the basis for rejecting the claim, and thus Petitioner has failed to meet the standard for ineffective assistance.

### 1.  Standard for Ineffective Assistance

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

A deficient performance is one in which counsel's errors were so great he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986).  An objective standard applies to proving such ineffectiveness, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent."  *United States v. Houtcens*, 926 F.2d 824, 828 (9th  Cir. 1991)(quoting *Strickland*, 466 U.S. at 687-90).   The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

### 2.  Application to Petitioner's Claim

Here, the trial court rejected Petitioner's claim by simply concluding "[there is no evidence that trial or appellate counsel's performance was ineffective."  (Exhibit X M.E.

1  2/16/05.)[7] No specific findings were made as to any factual assertions, or to the absence or

2  presence of either prong of the *Strickland* standard.

3        Respondents argue, in part, that the absence of an affidavit was not determinative on

4  Petitioner's claim. However, in rejecting Petitioner's direct appeal, the Arizona Court of

5  Appeals went to some lengths to address the absence of an affidavit.

6        ¶49   "Rule 32 does not require the trial court to conduct evidentiary
          hearings based on mere generalizations and unsubstantiated claims that
7          people exist who would give favorable testimony." *State v. Borbon*, 146
          Ariz. 392, 399, 706 P.2d 718, 725 (1985); *see also State v. Krum*, 183
8          Ariz. 288, 292-93, 903 P.2d 596, 600-01 (1995) (third-party affidavit
          alleging that victim recanted may, but rarely will, provide sufficient
9          evidence to warrant an evidentiary hearing); *State v. Zuck*, 134 Ariz.
          509, 512, 658 P.2d 162, 165 (1982) (counsel's affidavits are
10         unacceptable as an attempt to create new evidence) .
          ¶50   We also note Defendant failed to provide either an affidavit from
11         Diz or a third-party affidavit from counsel in support of his motion to
          vacate judgment. A court is justified in denying a motion for new trial
12         based on newly discovered evidence where statements are not made
          under oath or in affidavits. *State v. Salinas*, 129 Ariz. 364, 368, 631
13         P.2d 519, 523 (1981). Regardless of whether an affidavit is required
          under Rule 24, there must be sufficient indication the newly discovered
14         evidence would have changed the verdict. *State v. Lindsay*, 149 Ariz.
          493, 498, 720 P.2d 94, 99 (App. 1985), *vacated in part on other*
15         *grounds*, 149 Ariz. 472, 720 P.2d 73 (1986). Without affidavits, there
          is no basis to conclude that the alleged testimony of Diz was substantial
16         and accurate or would have any effect whatsoever.

17  (Exhibit R, Mem. Dec. at 15.) Given the Arizona standards cited in this decision, it was

18  unreasonable for counsel to fail to provide an affidavit of Petitioner's new found witness to

19  support his motions.

20        It might be argued that the original motion was required to be filed so hastily as to not

21  permit preparation of an affidavit. However, a motion to vacate is not required to be filed

22  until 60 days after sentencing. *See* Ariz. R. Crim. P. 24.2(a). Petitioner was sentenced on

23  June 28, 2002. (Exhibit K, Sentence.) His Motion to Vacate Judgement was filed just five

24  days later, on July 3, 2002 (Exhibit L). Respondents proffer no reason why additional time

25  could not have been taken to obtain an affidavit to present with the motion. Nor do

26  ———————————

27        [7]  The state appellate courts authored postcard denials on review of this claim.
      Accordingly, this Court looks through to the trial court's determination. *Ylst v. Nunnemaker*,
28  501 U.S. 797, 804 (1991).

Respondents offer any reason why counsel could not have obtained such an affidavit prior to filing his Motion for Reconsideration some 42 days later, on August 14, 2002 (Exhibit O). Nor do Respondents proffer any tactical reason for failing to present an affidavit. The undersigned sees none.

Accordingly, the undersigned concludes that counsel performed deficiently by failing to submit an affidavit with the motion to vacate.

That does not, however, resolve the issue. Rather, Petitioner must also show prejudice. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Here, the Arizona Court of Appeals decision is again instructive. That decision makes clear that Petitioner's appeal on this issue was not rejected solely because of the lack of an affidavit, but also based upon the failure to "present sufficient evidence of due diligence to obtain a hearing" and because "the evidence was merely impeaching" and "would not have changed the verdict." (Exhibit R, Mem. Dec. at 14-15.)

Perhaps if Petitioner could show that presentation of the affidavit would have altered those conclusions, then he might be able to show prejudice. However, nothing in Chambers' affidavit addresses Petitioner's lack of diligence in locating him. For example, Chambers' affidavit does not suggest that Chambers was evading Petitioner or counsel or was otherwise unlocatable prior to or during trial.

Nor does anything in the affidavit suggest that the characterization as "merely impeaching" was incorrect. Indeed, Chambers affidavit does not affirmatively show that Petitioner was not or could not be the murderer. Rather it simply offers contradictions to the testimony of others, and asserts that Chambers was not with Petitioner at the motel at the time of the murder. The Affidavit was, in fact, largely a reflection of the proffer of testimony that counsel included in the motion. The only significant addition was the claim that Chambers had been propositioned by various people to incriminate Petitioner. (*Compare*

Exhibit L, Mot. to Vacate at 3-4, and Exhibit V, PCR Pet., Exh. B, Affid.)

Accordingly, the undersigned finds that the outcome of the proceeding would not have been different had the Chambers Affidavit been provided by trial counsel. Therefore, the undersigned concludes that Petitioner has failed to show ineffective assistance of counsel. Thus, this portion of Ground One should be denied on the merits.

### F. SUMMARY

That portion of Ground One based on trial counsel's failure to submit an affidavit by Petitioner's passenger and all of Ground Three (actual innocence) are without merit and should be denied. The balance of Petitioner's grounds for relief are unexhausted, procedurally defaulted, and Petitioner has failed to show cause and prejudice or actual innocence to excuse that default. Accordingly, those claims must be denied with prejudice.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the portion of Ground One based on trial counsel's failure to submit an affidavit by Petitioner's passenger and all of Ground Three (actual innocence) of the Petitioner's Petition for Writ of Habeas Corpus, filed October 27, 2008 (#1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed October 27, 2008 (#1) be **DISMISSED WITH PREJUDICE**.

### V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing

Section 2254 Proceedings.  Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: October 27, 2009

_____
JAY R. IRWIN
United States Magistrate Judge

X:\Drafts\Draftkraft\R-1970-0454-RR-09-09-23 ss HC.wpd